IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **JORGE OSBALDO AGUILERA,** | ‖ | |
| Petitioner, | ‖ | **No. 12-CV-4099-DEO** |
| v. | ‖ | |
| **UNITED STATES OF AMERICA,** | ‖ | **ORDER** |
| Respondent. | ‖ | |

_____

## I. INTRODUCTION

This matter is before the Court on Petitioner, Jorge Osbaldo Aguilera's [hereinafter Mr. Aguilera], 28 U.S.C. § 2255 Petition, Docket No. 1, Att. 2. The parties appeared for hearing on October 21, 2013. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2008, the grand jury returned an indictment against Mr. Aguilera on a variety of charges related to the distribution of methamphetamine. On February 19, 2009, a superseding indictment was filed based on the same

allegations.  See 08-CR-4095-DEO,[1] Docket No. 33.  On June 19, 2009, a jury convicted Mr. Aguilera of conspiracy to distribute 50 grams or more of methamphetamine.  The jury also found Mr. Aguilera guilty of possession with intent to distribute 50 grams or more of methamphetamine.  See 08-CR-4095-DEO, Docket No. 80.

Mr. Aguilera appealed the conviction.  The 8th Circuit Court of Appeals set out the relevant factual background regarding Mr. Aguilera's case:

> On December 5, 2008, law enforcement agents arranged a controlled purchase of methamphetamine from Luis Mata-Gutierrez. Mata-Gutierrez agreed to deliver four ounces of methamphetamine to a confidential informant in Le Mars, Iowa.  At Aguilera's trial, Mata-Gutierrez testified that he was in Omaha, Nebraska, with Aguilera and Alfonso Saldana when the confidential informant called him requesting methamphetamine.  Mata-Gutierrez explained that Saldana supplied him with drugs to sell, and that Aguilera helped Saldana distribute drugs.  He also testified that after the informant placed the order, Saldana retrieved the methamphetamine and Aguilera hid the drugs in a blue GMC Yukon, which was borrowed from Saldana.  Aguilera and Mata-Gutierrez then left for Le Mars.

---

[1] United States v. Luis Ismael Mata-Gutierrez and Jorge Osbaldo Aguilera, a/k/a Victor Alonso Saldana-Lara, 08-CR-4095-DEO.

Law enforcement agents recorded a telephone conversation between Mata-Gutierrez and the confidential informant while Aguilera and Mata-Gutierrez were en route to Le Mars. In this conversation, Mata-Gutierrez described his location to the confidential informant, and the informant provided directions to his residence. Knowing that Mata-Gutierrez had used a blue GMC Yukon in the past, law enforcement agents began to search for the vehicle. Iowa State Trooper Jeremy Probasco eventually observed the Yukon, which was driven by Aguilera, and stopped it for not having license plates. Aguilera was arrested for driving without a valid license, and a search of the vehicle uncovered 111.38 grams of methamphetamine.

In a superseding indictment, Aguilera and Mata-Gutierrez were charged with conspiring to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine. Mata-Gutierrez was also charged with two additional counts of possession with intent to distribute methamphetamine. Mata-Gutierrez pleaded guilty to all four counts, but Aguilera's case went to trial, and Mata-Gutierrez testified against him.

At trial, Aguilera moved to suppress the evidence obtained in the search of the Yukon, but the district court denied his motion. The case was then submitted to the jury, and after deliberating for less than thirty minutes, the jury returned a guilty verdict on both counts of the indictment. Aguilera filed a motion for a new trial

pursuant to Federal Rule of Criminal Procedure 33, and the district court denied the motion.

Before sentencing, Aguilera provided a "safety-valve statement" to the government. This statement was designed to satisfy the requirement of 18 U.S.C. § 3553(f)(5) and USSG § 5C1.2(a)(5) that a defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses of conviction that were part of the same course of conduct or of a common scheme or plan." In his statement, Aguilera asserted that he was not involved in using or distributing drugs, and claimed that "[w]hen we were stopped by law enforcement, I did not know there were drugs in the Yukon." He also explained that on December 5, 2008, Mata-Gutierrez had asked him for a ride to George, Iowa, so that Mata-Gutierrez could pay rent. The district court heard arguments from the parties on whether the safety-valve provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2 applied to Aguilera, but denied relief. The district court then sentenced Aguilera to 120 months' imprisonment.

United States v. Aguilera, 625 F.3d 482, 484-85 (8th Cir. 2010).

As noted above, following his conviction, Mr. Aguilera appealed his case to the 8th Circuit Court of Appeals. Mr. Aguilera made three arguments to the 8th Circuit Court of Appeals: 1) probable cause did not exist to support a search

4

of his vehicle; 2) this Court should have granted a new trial;

and 3) he was entitled to safety-valve relief. Aguilera, 625

F.3d at 485. The 8th Circuit affirmed Mr. Aguilera's

conviction and sentence. Regarding the search issue, the 8th

Circuit stated:

> [b]ased on the information obtained during
> the investigation of Mata-Gutierrez, law
> enforcement officers were instructed to
> watch for Mata-Gutierrez's gold-colored
> Jeep or a blue GMC Yukon. Once Trooper
> Probasco observed the Yukon on the route to
> the informant's residence, and verified
> that Mata-Gutierrez was a passenger in the
> vehicle, he had probable cause to believe
> that the vehicle contained the
> methamphetamine that was scheduled for
> delivery. Accordingly, the district court
> did not err in concluding that the
> trooper's warrantless search was
> permissible under the automobile exception,
> and we need not consider whether the search
> of the vehicle was a valid search incident
> to arrest.

Aguilera, 625 F.3d at 486. On the new trial issue, the 8th

Circuit stated:

> the evidence here did not compel the grant
> of a new trial. To the extent that the
> duration of deliberations is relevant at
> all, this was not a complex case. If the
> jury credited Mata-Gutierrez's testimony,
> which directly implicated Aguilera in the
> charged conduct, then lengthy deliberations

were unnecessary. The district court did
not abuse its discretion in denying
Aguilera's motion for a new trial.

_Aguilera_, 625 F.3d at 487. Regarding the safety valve

interview, the 8th Circuit ruled that:

> In his safety-valve statement, Aguilera
> continued to proclaim his innocence,
> despite the government's proof that he
> participated in a conspiracy to possess and
> distribute methamphetamine. The district
> court simply did not believe that Aguilera
> was telling the subjective truth as he knew
> it, and this finding was not clearly
> erroneous.

_Aguilera_, 625 F.3d at 488.

Following the 8th Circuit's decision, Mr. Aguilera timely

filed the present 28 U.S.C § 2255 petition.[2] Docket No. 2.

On December 7, 2012, this Court entered an Initial Review

Order allowing Mr. Aguilera's case to proceed and appointing

----

[2] As was stated in the Ms. Forsyth's Brief in Support of
Motion to Withdraw, "28 U.S.C.§2255(f) places a one year
statute of limitations on the filing of a 2255 motion. The
mandate for Mr. Aguilera's appeal was filed November 17, 2010.
At first blush, it would appear that Mr. Aguilera's 2255
motion was filed untimely, however a series of pro se Motions
for Extension of time were filed and granted. The last
extension was granted on September 27, 2012, by United States
Magistrate Judge Leonard T. Strand setting a deadline of
November 5, 2012 for the filing of the 2255 motion. Mr.
Aguilera filed his 2255 motion on November 2, 2012, thus his
motion was timely filed." Docket No. 7, Att. 1, p. 1-2.

attorney Priscilla Forsyth as his attorney. Docket No. 3. On February 7, 2013, Ms. Forsyth filed a Motion to Withdraw pursuant to the holding in <u>Anders v. California</u>, 386 U.S. 738 (1967). Docket No. 7. On May 8, 2013, the Government filed a Motion to Dismiss Case as Frivolous. Docket No. 8. As stated above, the Court held a joint Motion to Dismiss/merits hearing on October 21, 2013. During that hearing, the Court verbally denied Ms. Forsyth's Motion to Withdraw. See Docket No. 12. Both the Petitioner, Mr. Aguilera, and his former Attorney, Wallace Taylor, had an opportunity to be heard during the hearing. Following that hearing, the Court took all matters under advisement.

## III. MOTION TO DISMISS STANDARD

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. See <u>United States v. Oldham</u>, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. See <u>Payne v. United States</u>, 78 F.3d 343, 347 (8th Cir. 1996). "Accordingly, [a district court may summarily dismiss a motion brought under 28 U.S.C.

§ 2255] if (1) the ... allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); see also Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); United States v. Hester, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, a 28 U.S.C. § 2255 motion can be dismissed without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Standing Bear v. United States, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam). See also Hessman v. United States, C08-3052-LRR, 2012 WL 10486 (N.D. Iowa Jan. 3, 2012), appeal dismissed (June 21, 2012).

## IV.  MOTION TO DISMISS ANALYSIS

As discussed above, the Government filed a Motion to Dismiss, arguing Mr. Aguilera's Petition is frivolous.  The Government argues:

> On November 5, 2012, Movant filed his pro se § 2255 petition.  (CvD 1).  Pursuant to court order, attorney Priscilla Forsyth, filed a motion to withdraw and brief in support of motion to withdraw on February 6, 2013, pursuant to Anders v. California, 386 U.S. 738 (1976), stating after thorough review of the record, no non-frivolous issues were present in Movant's pro se § 2255 motion.  Attorney Forsyth offered limited arguments to support Movant's safety-valve claim pursuant to Anders, however states she does not have any argument for the Court as to the other issues raised in Movant's pro se § 2255 motion and requested Movant be allowed to address any additional issues in a pro se brief.  (CvD 7-1, p. 6).  The government agrees with Ms. Forsyth and asserts that Movant makes no non-frivolous claims in his Section 2255 motion.  At this point, the court would be within its discretion to dismiss the case because Movant has failed to present non-frivolous claims.  See United States v. Arcoren, 633 F. Supp. 2d 752, 757 (D. S.D. 2009).

Docket No. 8, p. 2.

Because the Court had an opportunity to hear from both Mr. Aguilera and Mr. Taylor during the hearing, the Court will

9

deny the Government's Motion to Dismiss and instead consider Mr. Aguilera's 28 U.S.C. § 2255 on its merits.

**V.   HABEAS STANDARD**

28 U.S.C. § 2255(a) provides,

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**VI.  ISSUES**

Mr. Aguilera's initial pro se Petition, Docket No. 1, Att. 2, raises several issues.  First, Mr. Aguilera argues ineffective assistance of counsel.  Next, Mr. Aguilera argues that facts affecting his sentence should have been found by the jury.  Finally, Mr. Aguilera argues the sentence was unreasonable.  The Court will consider these issues below.

**VII. ANALYSIS**

**A.   Ineffective Assistance of Counsel**

The primary issue raised in Mr. Aguilera' Petition is ineffective assistance of counsel related to the "safety

valve" request.  As numerous courts have stated, "[s]ection 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice..., or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice..." <u>Ramey v. United States</u>, 8 F.3d 1313, 1314 (8th Cir. 1993) (internal citations omitted).

Moreover, defendants often raise claims that would not ordinarily be cognizable on collateral review by couching them as ineffective assistance claims.  See <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 383 (1986).  But as the court explained in <u>Kimmelman</u>, 477 U.S. at 381, such claims must meet the "rigorous standard" of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In this case, the Government points out that Mr. Aguilera's safety valve argument was already considered by the 8th Circuit Court of Appeals.  However, Mr. Aguilera now couches the safety valve argument in terms of ineffective assistance of counsel.  Accordingly, the Court will consider his safety valve argument in terms of ineffective assistance of counsel.

"[T]he right to counsel is the right to effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 (1970).  The Fourteenth Amendment Due Process Clause guarantees the right to a fair trial.  Strickland v. Washington, 466 U.S. 668, 684-85 (1984).  The Sixth Amendment guarantees the right to assistance of counsel.  U.S. Const. Amend. VI.  In Strickland, the Supreme Court elaborated on the relationship between the Fourteenth and Sixth Amendments:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

466 U.S. at 686.

The moving party must demonstrate two components to establish ineffective assistance of counsel:  (1) counsel's conduct was deficient, and (2) prejudice.  466 U.S. at 687.  Counsel's conduct is deficient when it is unreasonable "under prevailing professional norms."  Padilla v. Kentucky, 130 S. Ct. 1473, 1481 (2010) (quoting Strickland, 466 U.S. at 688).  Counsel's conduct is prejudicial if "counsel's errors" are so serious that they "deprive the defendant of a fair trial . . . ."  466 U.S. at 687.  In other words, a petitioner must show "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability does not require a different outcome be proven by a "preponderance of the evidence" but does require "a probability sufficient to undermine confidence in the outcome." Id.

After his conviction, Mr. Aguilera hoped to receive a "safety-valve" sentence reduction. In most cases, defendants give oral statements to law enforcement offices to accomplish the safety-valve "debriefing." However, in this case, Mr. Aguilera gave a written safety valve statement. As the Court of Appeals explained:

> The safety-valve provisions permit a district court to impose a sentence below the statutory minimum term of imprisonment if, among other requirements, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); see USSG § 5C1.2(a)(5). The defendant has the burden to prove that he qualifies for this relief, and we review for clear error the district court's findings about the completeness and truthfulness of a defendant's provision of information. United States v. Soto, 448 F.3d 993, 995 (8th Cir. 2006)...
>
> The district court agreed with Aguilera that safety-valve relief may be granted

even when the defendant maintains that he is innocent. And the court did not require Aguilera to prove that his safety-valve statement was objectively true, as required by the majority in <u>Reynoso</u> [<u>United States v. Reynoso</u>, 239 F.3d 143 (2d Cir. 2000)]. After discussing <u>Reynoso</u>, the district court noted that "the ruling of this Court is not going to be that it has to be that he had to prove it was true." (S. Tr. 48). The court explained instead that Aguilera "does have to carry the burden of proof to determine-persuade the Court that he has fully and completely revealed everything, and the Court felt that under the circumstances as we've talked about for the last couple of hours that that wasn't done." (S. Tr. 55).

Even accepting for purposes of analysis that a defendant seeking safety-valve relief need provide only that information which he subjectively believes is true, the district court did not clearly err in denying relief to Aguilera. In his safety-valve statement, Aguilera continued to proclaim his innocence, despite the government's proof that he participated in a conspiracy to possess and distribute methamphetamine. The district court simply did not believe that Aguilera was telling the subjective truth as he knew it, and this finding was not clearly erroneous. See <u>United States v. O'Dell</u>, 204 F.3d 829, 838 (8th Cir. 2000).

<u>Aguilera</u>, 625 F.3d 487-488.

In this Petition, Mr. Aguilera argues that it was ineffective assistance when Mr. Taylor allowed Mr. Aguilera to submit a written safety valve statement, as opposed to the

traditional oral interview. See Docket No. 2, Att. 1, p. 2-6
and Docket No. 7, Att. 1, p. 4, stating:

>At the time of sentencing, there was a
>brief discussion regarding the fact the
>defendant gave a written statement rather
>than a proffer debriefing to the
>Government, as is the usual practice.
>(Sentencing Tr. p 34, line 23-41). During
>that discussion, Mr. Taylor stated the
>following, "Mr. Knief did, after receiving
>this written statement last Thursday, I
>would guess it was, e-mail me and ask if
>Mr. Saldana-Lara [also known as Jorge
>Osbaldo Aguilera] would submit to a
>debriefing by the task force officers. I
>responded that I wasn't sure what benefit
>that would be since they wouldn't believe
>him anyway but if I was missing something
>to let me know if there was some beneficial
>reason for doing it. I didn't receive any
>response. But in any event, a debriefing
>by law enforcement is not necessary for the
>safety valve." (Sentencing Tr. p. 37, line
>18-p.38, line 1).
>
>It is not clear from the record whether Mr.
>Taylor researched this specific issue, or
>attempted to determine whether, although
>not required, safety valve had in fact been
>granted on a statement such as the one
>submitted, without a debriefing by law
>enforcement, testimony at trial or other
>information being provided by the
>defendant. It is also not clear from the
>record whether Mr. Taylor specifically
>discussed the issue of a debriefing for
>safety valve with Mr. Aguilera or whether
>he made that determination without
>consultation with his client. While there
>is no guarantee that a debriefing would
>have resulted in the Court finding that Mr.
>Aguilera had been truthful and complete in

the information he provided, it would have
given him a chance to answer or not to
answer the questions posed by the
Government during the sentencing hearing,
such as who the person is he went with from
Arizona to Omaha, who introduced him to
Luis Mata-Guiterrez, etc. (Sentencing Tr.
p. 35).

Both Mr. Aguilera and Ms. Forsyth go on to argue that Mr.
Aguilera was prejudice by the decision to do a written safety-
valve statement.

The Government responds by saying that Mr. Taylor made a
valid strategic choice regarding the written safety-valve
statement. As stated in the Government's Motion to Dismiss:

it was the professional opinion of Movant's
counsel that providing a debriefing to
government agents would have been harmful
to Movant. "The reason that I advised Mr.
Aguilera to submit to a written statement
is that during my representation of him he
continually denied his guilt and I had
difficulty getting a consistent story from
him. Based on my experience in other cases
I knew that his denial of the charges and
his inability to have a consistent story
would be fatal to a successful safety valve
interview."

Docket No. 7, p. 4. The Government attached Mr. Taylor's
affidavit to its Motion to Dismiss. Beyond the above quoted
portion of affidavit, Mr. Taylor also stated that, "[i]n
addition, an interview with government agents would have

16

opened Mr. Aguilera up to questions beyond just his conduct in the charged offense." Docket No. 7, Att. 1, p. 1-2.

One of the core principals of habeas jurisprudence is that trial counsel's strategic decisions are "virtually unchallengeable unless they are based on deficient investigation, in which case the presumption of sound trial strategy ... founders on the rocks of ignorance." <u>Link v. Luebbers</u>, 469 F.3d 1197, 1204 (8th Cir. 2006) (quoting <u>White v. Roper</u>, 416 F.3d 728, 732 (8th Cir. 2005)) (internal quotations omitted). One of trial counsel's strategic decisions is that of "reasonably deciding when to cut off further investigation." <u>Winfield v. Roper</u>, 460 F.3d 1026, 1034 (8th Cir. 2006).

The Court agrees with the Government that Mr. Taylor made a valid strategic decision when he opted to have Mr. Aguilera provide a written safety-valve statement. Mr. Aguilera had a history of denying his involvement in the charged offense. Mr. Aguilera's best chance of receiving safety-valve relief was to provide the Government, a tailored, specific, written statement. Mr. Taylor's decision to avoid a verbal interview, when such an interview could have further prejudiced Mr. Aguilera's position, was sound. Accordingly, Mr. Aguilera

cannot prove the deficient prong of the <u>Strickland</u> standard. Moreover, even if he could, it is far from certain that Mr. Taylor's strategic decision prejudiced Mr. Aguilera. Mr. Aguilera could have found himself in a worse position had he provided a verbal debriefing. Accordingly, Mr. Aguilera's 28 U.S.C. § 2255 claim related to ineffective of assistance must be denied.

**B. Facts Regarding Sentence Enhancement**

Ground two of Mr. Aguilera's Petition argues that facts which increase a defendant's sentence must be found by a jury. See Docket No. 2, p. 5. However, this issue was not briefed by Mr. Aguilera or his attorney. Additionally, as argued by the Government:

> This is claim is refuted by the record. The verdict form shows the jury found Movant guilty of the drug type and quantity. (CrD 80). Even if this claim was supported by the record, it would be procedurally barred because Movant did not challenge the finding of drug type and quantity on direct appeal. <u>Frady</u>, 456 U.S. at 165.

Docket No. 8, p. 5. See 08-CR-4095, Docket No. 80, "Verdict Form." Accordingly, Mr. Aguilera's Petition related to the drug quantity sentence enhancement must be denied.

18

## C. Mitigating Factors/Unreasonable Sentence

Finally, Mr. Aguilera argues that, "[i]n the instant matter, the Court was aware of several mitigating facts, relevant to sentencing under 18 U.S.C. § 3553(a), but failed to actually consider those factors in imposing a sentence which was ultimately unreasonable... Accordingly, district courts must consider all factors-even factors prohibited by the formerly mandatory guideline-in determining the type of sentence that satisfies the sentencing mandate under § 3553(a)(2)." Docket No. 2, Att. 2, p. 9-11. Mr. Aguilera goes on to argue that his counsel was ineffective for failing to bring the 'mitigating factors' to the Court's attention. Id.

The Government responds by saying:

> Next Movant claims his attorney was ineffective for failing to object to numerous errors in the PSIR; for failing to contest the government's alleged breach of plea agreement, and failing to address these claims on appeal. (CvD 1-3, p. 6). Movant does not say what errors in the PSIR his attorney failed to object to and there was no plea agreement in existence. This case went to trial, therefore, it is impossible for a "breach of the plea agreement" to exist. Movant also claims his sentence was unreasonable and that it was greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a)(2) because the court erred by failing to consider §

3553(a)(6) mitigating factors in
determining his sentence. (CvD 1-3, pp. 8,
9, 10). Movant also claims his attorney
was ineffective for failing to object to
the Court not considering the mitigating
factors and preserving the issue for
appeal. (CvD 1-3, p. 10). However, Movant
does not state what mitigating factors this
Court should have considered, therefore,
his counsel cannot be ineffective for not
objecting to these unknown mitigating
factors.

Docket No. 8, p. 5-6.

The Court agrees that this argument is not sufficiently
grounded in facts to be cognizable. Mr. Aguilera has failed
to articulate which facts he feels the Court ignored or how
those facts led to an "unreasonable" sentence.

Based on the references to a "plea agreement" in his
Memorandum of Law, the Court believes that Mr. Aguilera
regrets his decision to take his case to trial. It is
possible that accepting a plea agreement may have led to a
reduced sentence. However, that regret does not constitute a
claim upon which habeas relief can be granted.

Moreover, to the extent that Mr. Aguilera argues his
counsel, Mr. Taylor, was ineffective for failing to raise
mitigating factors, that claim also fails. Under the
Strickland standard discussed above, a petitioner must show
both deficient performance and prejudice to make a claim for

ineffective assistance of counsel. In this case, Mr. Aguilera has failed to articulate what factors Mr. Taylor should have raised. Accordingly, it is impossible for this Court to determine that Mr. Taylor's performance was deficient or that a hypothetical deficiency resulted in prejudice.

For the reasons set out above, Mr. Aguilera's Petition for 28 U.S.C. § 2255 relief on the ground that he received an unreasonable sentence must be denied.[3]

## VIII. CERTIFICATE OF APPEALABILITY

Under the Code, in most situations, a party must receive a Certificate of Appealability before that party can appeal a district court's ruling on a habeas petition to the circuit court.[4] 28 U.S.C. §2253(c)(2) gives the District Court discretionary power to grant a Certificate of Appealability. Under that section, the Court should only issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 482 (2000)(citing 28 U.S.C. §2253(c)).

---

[3] To the extent Mr. Aguilera's pleadings raise other pro se arguments, the Court has considered those arguments and determined they are not supported by the record and must be denied.

[4] See, generally, 28 U.S.C. §2253.

In <u>Slack</u>, the Supreme Court defined "substantial showing" as follows:

> To obtain a [certificate of appealability] under §2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under <u>Barefoot</u> [<u>v. Estelle</u>, 463 U.S.880, at 894,], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Barefoot</u>, 463 U.S. 890, at 893, and n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (sum[ming] up the "substantial showing" standard).

<u>Slack</u>, 529 U.S. at 483-84. <u>See</u> also <u>Garrett v. United States</u>, 211 F.3d 1075, 1076-77 (8th Cir. 2000).

Mr. Aguilera's counsel briefed one primary issue, ineffective assistance of counsel related to the safety valve sentence reduction. Even though the Court is satisfied with its ruling, the Court believes that it is possible that "reasonable jurists could debate whether...the petition should have been resolved in a different manner". <u>Slack</u>, 529 U.S. at 483-84. The existence of the circuit courts and the Supreme Court is a testament to the fact that district courts are not infallible. The Court's decision in this case was a judgment call, and this Court is of the opinion that all its judgment

22

calls should be reviewable. Mr. Aguilera's claim is sufficiently well founded that a review would be appropriate.

The case of <u>Tiedeman v. Benson</u>, 122 F.3d 518 (8th Cir. 1997) states that in granting a Certificate of Appealability, this Court must state the issues upon which the applicant may have made a substantial showing of the denial of his constitutional rights. Accordingly, Mr. Aguilera may appeal the ineffective assistance of counsel claim discussed above.

## IX. CONCLUSION

Mr. Aguilera's Petition for habeas relief pursuant to 28 U.S.C. § 2255 is denied. The Clerk of Court shall issue a certificate of appealability as provided above.

**IT IS SO ORDERED** this 24th day of January, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa